Margot HERNANDEZ, and as Guardian ad Litem for minors Joana Hauri & Lizeth Simones; Elizabeth Carmona; Celia Gallardo; Anaberta Pule; Juan Damaso; Edith Navarette, and as Guardian ad Litem for Armando Gallardo; Gelacio Herrera; Armando Nmi Avila; Salvador Ayala; Alciviadez Ayala; Silvia Garduno; Angel Justo Palma, Plaintiffs–Appellants,

v.

CITY OF EL MONTE; Wayne Clayton, Chief of Police, City of El Monte, CA.; George Hopkins, Sgt.; Marci Smith, Sgt.; George Mendoza, Agent, Defendants–Appellees.

Raul Duron GARZA; Margot Hernandez, and as Guardian ad Litem for minors Joana Hauri & Lizeth Simones; Elizabeth Carmona; Celia Gallardo; Anaberta Pule; Juan Damaso; Edith Navarette, and as Guardian ad Litem for Armando Gallardo; Gelacio Herrera; Armando Nmi Avila; Salvador Ayala; Alciviadez Ayala; Silvia Garduno; Angel Justo Palma, Plaintiffs–Appellants,

v.

CITY OF EL MONTE; Wayne Clayton, Chief of Police, City of El Monte, CA.; George Hopkins, Sgt.; Marci Smith, Sgt.; George Mendoza, Agent, Defendants–Appellees.

Nos. 95–56731, 95–56736.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1997.

Decided March 3, 1998.

Robert M. Neubauer, Thomas E. Beck & Associates, Los Angeles, California, for plaintiffs-appellants.

Ann M. Maurer, Franscell, Strickland, Roberts & Lawrence, Pasadena, California, for defendants-appellees.

Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,* District Judge.

PREGERSON, Circuit Judge:

The plaintiffs appeal from the district court's dismissal of *Hernandez v. City of El Monte ("Hernandez")* for judge-shopping and lack of prosecution. The plaintiffs appeal from the district court's dismissal of *Garza v. City of El Monte ("Garza")* for judge-shopping and failure to timely file within the statute of limitations. We have jurisdiction under 28 U.S.C. § 1291. We reverse the dismissal of *Hernandez.* We affirm the dismissal of *Garza,* without prejudice.

## FACTS AND PRIOR PROCEEDINGS

The *Hernandez* and *Garza* actions involve the same events and the same parties. The plaintiffs in each case are Spanish-speaking individuals who attended a party at a private residence in El Monte, California, on the evening of June 11, 1994. Shortly before midnight, El Monte police officers arrived at the scene in response to a complaint about a loud party at the same location. The plaintiffs allege that the police officers addressed them in English, a language that the plaintiffs do not understand, and became irritated when the plaintiffs failed to respond to the officers' commands. According to the plaintiffs, the police officers then attacked them with their fists, batons, flashlights, and chemical sprays. The melee that ensued ended sometime after midnight, on the morning of June 12, with the arrests of plaintiffs Garza, Avila, and Palma.

On June 12, 1995, exactly one year after the incident, the plaintiffs filed the *Hernandez* action in federal district court. The *Her-nandez* complaint alleges causes of action under 42 U.S.C. §§ 1983 and 1985 against the City of El Monte, the El Monte Chief of Police, and several police officers (collectively, the "defendants"). Specifically, the *Hernandez* complaint alleges that the defendants deprived the plaintiffs of their constitutional rights through the use of excessive force, false arrest, conspiracy, malicious prosecution, obstruction of justice, cruel and unusual punishment, and unlawful search and seizure. On June 23, the plaintiffs received a notice that *Hernandez* had been assigned to Judge Manuel L. Real. The plaintiffs did not serve the *Hernandez* complaint upon the defendants.

On July 11, the plaintiffs filed the *Garza* action against the same defendants in California Superior Court. The *Garza* complaint is virtually identical to the *Hernandez* complaint, naming the same parties and the same causes of action. The only difference between the two complaints is that the names of individual parties have been shuffled so that the captions read differently. The *Garza* complaint was served upon all defendants on August 1.

On August 29, the defendants removed *Garza* to federal court pursuant to 28 U.S.C. §§ 1446 and 1447. *Garza* was initially assigned to Judge John G. Davies. On September 17, the defendants filed a notice of related cases under C.D. Cal. R. 4.3.1, stating that *Garza* and *Hernandez* arose from the same events and raised the same questions of law and fact. The defendants requested that *Garza* be transferred to Judge Real to avoid a substantial duplication of labor.[1]

Also on September 17, the defendants filed a motion to dismiss *Garza* pursuant to Fed. R.Civ.P. 12(b)(6). The defendants asserted that the *Garza* complaint was not timely filed

---

* Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

1. C.D. Cal. R. 4.3.1 reads:

   Notice. At the time a civil action is filed, or as soon as known thereafter, the attorney shall file and serve on all parties who have appeared a Notice of Related Case(s), stating whether any action pending in the Central District and the action being filed appear:

   (a) To arise from the same or substantially identical transactions, happenings or events; or
   (b) To involve the same patent, trademark or copyright . . . ; or
   (c) To call for determination of the same or substantially identical questions of law and fact; or
   (d) Likely for other reasons to entail substantial duplication of labor if heard by different judges.

within the one-year statute of limitations for actions under 42 U.S.C. §§ 1983 and 1985. The defendants further asserted that the *Garza* complaint failed to state a cause of action against all defendants under 42 U.S.C. § 1985(2) and (3).

On September 22, Judge Real issued to the plaintiffs an order to show cause ("OSC") why the *Hernandez* action should not be dismissed for lack of prosecution pursuant to C.D. Cal. R. 12, which provides for dismissal of civil actions that are "pending for an unreasonable period of time."[2] At the OSC hearing on October 2, Judge Real warned the plaintiffs that in "filing the Federal suit you're running close to your 120 days so I'll put this over to October 30th, 1995, at 11:00 a.m. and see what's happened." Judge Real apparently was referring to the 120–day–rule of Fed.R.Civ.P. 4(m), which requires a plaintiff to serve the summons and complaint upon the defendant within 120 days after the time of filing.[3] On the same day of this initial OSC hearing, *Garza* was transferred from Judge Davies to Judge Real (hereinafter referred to as "the district court"). On October 3–the day after the OSC hearing-the plaintiffs served the defendants with the summons and complaint in the *Hernandez* action.

Another hearing on the OSC in *Hernandez* and the motion to dismiss *Garza* was held on October 30. At this hearing, the district court asked the plaintiffs' attorney why he had filed the *Garza* complaint in state court after having filed the identical *Hernandez* complaint in federal district court.

COURT: Mr. Beck, why did you file a claim in State Court when you already had a claim pending here?

BECK: It was my intent to let this case go.

COURT: Why?

**2.** C.D. Cal. R. 12.1 reads:

**Dismissal; unreasonable delay.** Civil actions which have been pending for an unreasonable period of time without any action having been taken therein may, after notice, be dismissed for want of prosecution.

**3.** Fed.R.Civ.P. 4(m) reads:

**Time limit for Service.** If service of the summons and complaint is not made upon a defen-

BECK: Because I wanted to try the case in Pomona.

COURT: No. Why, Mr. Beck? That is judge shopping. That's judge shopping, and it's very, very transparent....

BECK: ... I get to pick my juries out there. There are certain advantages in filing —

COURT: Well, why did you file here in the first place then —

BECK: Because —

COURT: if you wanted to be in Pomona?

BECK: Because there are discovery advantages in being in Federal Court.

COURT: Where did you want to be, Mr. Beck, in Pomona or here? You filed the case here, I take it, because you wanted to be here. Now you tell me you filed in Pomona because you wanted to be in Pomona. Now, which is it?

BECK: It's both.

COURT: Okay. I'm dismissing both cases because I think it's blatant judge shopping. Both cases are dismissed with prejudice.

BECK: Very well.

COURT: And don't ever do that again or you're going to the Disciplinary Committee, Mr. Beck.

The district court's order dismissing *Hernandez* with prejudice states that the matter is dismissed "for want of prosecution and plaintiffs' misconduct in blatant judge shopping." The order dismissing *Garza* with prejudice states that the matter is dismissed "for failure to file and serve within the stat-

dant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

398

ute of limitations and plaintiffs' misconduct in blatant judge shopping." The plaintiffs appeal each of these orders.

## STANDARD OF REVIEW

█ This court has not previously stated the standard of review for a dismissal on grounds of judge-shopping. We have held generally that we review for abuse of discretion a district court's imposition of sanctions pursuant to its inherent powers. *See Mark Indus., Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d 730, 732 (9th Cir.1995). Accordingly, we will review for abuse of discretion the district court's dismissal of *Hernandez* and *Garza* for judge-shopping.

█ We also review for abuse of discretion the district court's dismissal of *Hernandez* for lack of prosecution. *See Oliva v. Sullivan,* 958 F.2d 272, 274 (9th Cir.1992) (reviewing for abuse of discretion a district court's sua sponte dismissal of case for lack of prosecution).

█ In contrast, we review de novo the district court's dismissal of *Garza* for failure to timely file within the statute of limitations. *See Torres v. City of Santa Ana,* 108 F.3d 224, 226 (9th Cir.1997) (reviewing de novo a dismissal for failure to timely file within statute of limitations).

## ANALYSIS

### A. Judge–Shopping

█ The plaintiffs filed *Garza* in state court one month after filing *Hernandez* in federal court and eighteen days after receiving notice that *Hernandez* had been assigned to Judge Real. When the district court asked the plaintiffs why they had filed two identical actions, the plaintiffs explained that they had initially filed *Hernandez* in federal court because of discovery advantages, but then decided to dismiss that action and file *Garza* in state court to gain advantages in jury selection. The plaintiffs did not explain why they decided to change forums only after *Hernandez* had been assigned to a particular judge; or why they filed two identical actions under different names. The district court deter-

mined that their stated reason for filing the *Garza* action lacked credibility.

█ The record is not conclusive. We give special deference, however, to a district court's credibility determinations. *See Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 348 (9th Cir.1995); *see also Primus Automotive Financial Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997) (noting that "[t]he district court has 'broad fact-finding powers' with respect to sanctions, and its findings warrant 'great deference'") (quoting *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1366 (9th Cir.1990) (en banc)). Viewed as a whole, the circumstances presented could fairly support a determination that the plaintiffs were trying impermissibly to judge-shop in violation of C.D. Cal. R. 4.2.1, which states: "It is not permissible to dismiss and thereafter refile an action for the purpose of obtaining a different judge." Therefore, the district court's factual determination that the plaintiffs engaged in impermissible judge-shopping is not clearly erroneous.

█ The district court did not identify the authority pursuant to which it dismissed the actions for judge-shopping. The plaintiffs contend that the district court acted ultra vires. The defendants, on the other hand, argue that the district court may dismiss a case for judge-shopping pursuant to the inherent powers of the court and Fed.R.Civ.P. 41(b) (providing for involuntary dismissal "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court").

█ Our case law supports the proposition that a district court has the inherent power sua sponte to dismiss an action for judge-shopping. In *Oliva v. Sullivan,* 958 F.2d 272 (9th Cir.1992), for example, we held that "[d]istrict courts have inherent power to control their dockets and may impose sanctions, *including dismissal,* in the exercise of that discretion." *Id.* at 273 (reviewing the district court's sua sponte dismissal for lack of prosecution) (emphasis added). The Supreme Court has also stated that a "primary aspect" of every federal court's inherent power is "the ability to fashion an appropriate sanc-

tion for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). Judge-shopping clearly constitutes "conduct which. abuses the judicial process." The district court's inherent power to impose dismissal or other appropriate sanctions therefore must include the authority to dismiss a case for judge-shopping.[4]

But even if the district court has the inherent power to dismiss a case for judge-shopping, we have made clear that "dismissal is a harsh penalty and, therefore, it should only be imposed in *extreme circumstances.*" *Ferdik v. Bonzelet,* 963 F.2d 1258, 1260 (9th Cir.1992) (emphasis added). In *Henderson v. Duncan,* 779 F.2d 1421 (9th Cir.1986), we set forth five factors for a district court to consider before resorting to the penalty of dismissal: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* at 1423. Cases involving sua sponte dismissal merit special focus on considerations relating to the fifth *Henderson* factor. *See Oliva,* 958 F.2d at 274.

Where, as here, the district court does not explicitly consider the five *Henderson* factors, we review the record independently to determine whether the district court abused its discretion. *See Henderson,* 779 F.2d at 1424. We may affirm a dismissal where at least four factors support dismissal, *see Malone v. United States Postal Serv.,* 833 F.2d 128, 133 & n. 2 (9th Cir.1987), or where at least three factors "strongly" support dismissal, *Ferdik,* 963 F.2d at 1263. In the present case, only the first two *Henderson* factors may be said to support dismissal.

First, assuming that the plaintiffs were judge-shopping when they re-filed *Hernandez* in state court as *Garza,* we must conclude that the subsequent delays for re-filing

and then removal to federal court run counter to the public's interest in expeditious litigation. Thus, the first factor favors dismissal.

Second, the court's ability to manage its docket was undoubtedly somewhat impaired by the plaintiffs' filing of two identical complaints under different names. On the other hand, the plaintiffs' judge-shopping did not consume "large amounts of the court's valuable time," *Ferdik,* 963 F.2d at 1261, or cause any "serious disruptions" of the district court's schedule, *United States for Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.,* 857 F.2d 600, 603 (9th Cir. 1988). Accordingly, we conclude that the second factor "weigh[s] in favor of the sanction, but not heavily." *Wiltec Guam,* 857 F.2d at 603.

Third, while the defendants in the present case complain that they have been prejudiced by having to incur the costs of moving to dismiss *Garza* and litigating this appeal, they have not shown how the plaintiffs' judge-shopping might "impair the [defendants'] ability to go to trial or threaten to interfere with the rightful decision of the case," *Malone,* 833 F.2d at 131. Therefore, they have not shown the type of prejudice that we consider under the third factor. *See id.*

Fourth, the public policy favoring disposition of cases on their merits counsels strongly against dismissal. This policy favoring resolution on the merits "is particularly important in civil rights cases." *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir.1987) (reversing for abuse of discretion a Rule 41(b) dismissal of pro se litigant's § 1983 action for failure to comply with court order).

Fifth, the availability of less drastic alternatives also counsels strongly against dismissal of both actions. Other cases involving judge-shopping suggest alternative sanctions such as dismissal of the second action only, *see Telesco v. Telesco Fuel & Masons' Materials, Inc.,* 765 F.2d 356, 360 (2d Cir.1985), or a stay of the second action pending resolution of the first action, *see Semmes Motors, Inc.*

---

4. Because we conclude that a district court has the inherent power sua sponte to dismiss a case for judge-shopping, we need not resolve the question whether dismissal for judge-shopping is also authorized under Fed.R.Civ.P. 41(b).

*v. Ford Motor Co.,* 429 F.2d 1197, 1204 (2d Cir.1970).

In the present case, the district court did not discuss or try any alternative sanctions for judge-shopping. Nor did the court warn the plaintiffs that their judge-shopping might result in dismissal of both actions. Accordingly, the district court failed to consider less drastic alternatives so as to satisfy the fifth *Henderson* factor. *See Ferdik,* 963 F.2d at 1262 (applying fifth factor by inquiring whether district court discussed or tried alternatives, or warned the party of the chance of dismissal).

The balance of only two factors in favor of dismissal and three factors against it indicates that the district court abused its discretion in dismissing *Hernandez* and *Garza* for judge-shopping. In particular, the district court abused its discretion by failing to consider less drastic sanctions for judge-shopping than dismissal of both actions. *See Eldridge,* 832 F.2d at 1137 ("[B]efore dismissing an action, a court should always be certain that other less drastic alternatives are not available."). Accordingly, we reverse the district court's orders dismissing each action for judge-shopping.

### B. Lack of Prosecution

The plaintiffs filed *Hernandez* in federal court on June 12, 1995. On October 2, 1995, the district court warned the plaintiffs that they would need to serve their complaint promptly in order to effect service within 120 days of filing. The plaintiffs served the complaint upon the defendants on October 3, 1995–113 days after filing and one day after the district court's warning.

"The district court has the inherent power sua sponte to dismiss a case for lack of prosecution." *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir.1986). Because "[d]ismissal is a harsh penalty," however, it is appropriate "only in extreme circumstances" of "unreasonable delay." *Id.; see also* C.D. Cal. R. 12.1 (providing for dismissal, after notice, of civil actions "which have been pending for an unreasonable period of time without any action having been taken therein"). Considering the *Henderson* factors dis-

cussed in the previous section, we conclude that this case does not present "exceptional circumstances" of "unreasonable delay" so as to justify dismissal.

First, the public's interest in expeditious resolution of litigation does not favor dismissal where the action was in fact prosecuted within the guidelines suggested by the Federal Rules of Civil Procedure. Rule 4(m) provides for dismissal without prejudice where the complaint is not served upon the defendant within 120 days of filing. Fed. R.Civ.P. 4(m). The 120–day guideline suggests that service within 120 days is prima facie evidence of diligent prosecution. Moreover, our past decisions would support a finding that there is no unreasonable delay where the plaintiffs' case is only 113 days old and service is effected just one day after the court's warning. *See, e.g., Raiford v. Pounds,* 640 F.2d 944, 945 (9th Cir.1981) (reversing dismissal for lack of prosecution where case less than one year old and plaintiff filed pretrial order 22 days after order was due).

Second, with respect to the district court's need to manage its docket, we have previously stated that we must defer to the district court's determination of unreasonable delay "because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." *Henderson,* 779 F.2d at 1423. In this case, the district court indicated at the OSC hearing on October 2, 1995, that the plaintiffs should serve the defendants promptly, and stated that the court would "put this over to October 30th, 1995, at 11:00 a.m. and see what's happened." The district court's comments indicate that the court itself perceived no unmanageable interference with its docket due to lack of prosecution as of October 2, 1995. Accordingly, we may infer that the additional one day of delay before the plaintiffs' service of *Hernandez* on October 3, 1995, did not unduly interfere with the court's docket.

Third, the defendants suggest that because a presumption of prejudice arises from the plaintiffs' failure to prosecute, this factor should weigh in favor of dismissal. We agree. In *Anderson v. Air West, Inc.,*

542 F.2d 522, 524 (9th Cir.1976), we held that "[t]he law presumes injury from unreasonable delay." While this presumption of prejudice is rebuttable, *see id.*, the plaintiffs have yet to present "an excuse for [their] delay that is anything but frivolous," *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1281 (9th Cir.1980). Accordingly, this factor weighs in favor of dismissal regardless of whether the defendants have shown any actual prejudice. *See id.* (holding that "the burden of production shifts to the defendant to show at least some actual prejudice" only after the plaintiff has given a non-frivolous excuse for delay).

Fourth, the public policy favoring resolution on the merits clearly counsels against dismissal, especially because *Hernandez* is a § 1983 civil rights action. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987) (noting that the public policy favoring resolution on the merits "is particularly important in civil rights cases").

Fifth, the availability of less drastic sanctions also clearly counsels against dismissal. We apply this fifth factor by looking to whether the district court discussed or tried alternatives, or warned the plaintiffs of the chance of dismissal. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992). In this case, it does not appear that the district court discussed or tried any less drastic alternatives. The question, then, is whether the district court properly warned the plaintiffs of the chance of dismissal.

The district court properly warned the plaintiffs that they would need to show cause at an OSC hearing on October 2, 1995, why *Hernandez* should not be dismissed for lack of prosecution. At that OSC hearing, the district court also properly warned the plaintiffs that they were nearing the 120–day mark for service. But the district court's statement that it would wait until October 30, 1995, to "see what's happened" most likely led the plaintiffs to believe that *Hernandez* was in no danger of imminent dismissal. Moreover, the plaintiffs promptly heeded the district court's 120–day warning by serving the complaint on October 3, 1995–113 days after filing and one day after the OSC hearing on October 2. Therefore, "[n]othing in the

record demonstrates that counsel was on notice that the case would be dismissed" on October 30, *Oliva v. Sullivan*, 958 F.2d 272, 274 (9th Cir.1992).

All but the third *Henderson* factor weigh against dismissal of *Hernandez* for lack of prosecution. Given this balance of factors, and particularly the fact that the complaint was served within 120 days after filing and just one day after the district court's warning, we conclude that the district court abused its discretion in dismissing *Hernandez* for lack of prosecution. *See Raiford*, 640 F.2d at 945 ("Especially when a case is still young, a district court must consider ... less drastic alternative sanctions before dismissing.") (internal quotation marks omitted).

## C. Failure to Timely File Within the Statute of Limitations

■ The events underlying the *Hernandez* and *Garza* actions occurred on June 11–12, 1994. *Hernandez* was filed in federal district court on June 12, 1995–exactly one year after the cause of action accrued. *Garza* was filed in California state court one month later, on July 11, 1995.

■ Claims brought in California under 42 U.S.C. §§ 1983 and 1985 are governed by California's one-year statute of limitations for personal injury actions. *See Taylor v. Regents of Univ. of California*, 993 F.2d 710, 711 (9th Cir.1993). The parties do not dispute that *Hernandez* was timely filed. We must conclude that *Garza* was untimely filed, however, *unless* the doctrine of equitable tolling applies. We apply California law in deciding whether equitable tolling applies to *Garza*. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.1995).

■ The plaintiffs must satisfy three prerequisites to show eligibility for equitable tolling in California. *See Fobbs v. Holy Cross Health System Corp.*, 29 F.3d 1439, 1445 (9th Cir.1994). The three prerequisites are: (1) showing that tolling would not be inconsistent with the federal policy underlying the causes of action under consideration; (2) showing that the first claim filed alleges all the wrongs alleged in the second claim; and (3) showing that the plaintiffs gave time-

ly notice to the defendants in filing the first claim, that the defendants are not prejudiced in gathering evidence to defend against the second claim, and that the plaintiffs acted in good faith and with reasonable conduct in filing the second claim. *See id.*

■ "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir.1995) (quoting *Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir.1993)). Therefore, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207 (citing *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980)).

In the present case, it appears that the plaintiffs can satisfy the first two prerequisites of California's equitable tolling doctrine. First, given the importance of construing civil rights complaints liberally, *see Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir.1987), the plaintiffs could prove that tolling would not be inconsistent with the federal policy underlying their causes of action. Second, given the identical pleadings in *Hernandez* and *Garza,* the plaintiffs can show that the first complaint alleges all the wrongs alleged in the second complaint.

The problem lies with the third prerequisite. As discussed above, *Hernandez* was timely filed and arguably timely served so as to put the defendants on notice. There is no suggestion that the late filing of *Garza* caused any prejudice to the defendants in gathering evidence. Nevertheless, the district court's factual finding of judge-shopping-a finding that is not clearly erroneous-precludes a showing that the plaintiffs acted in good faith and with reasonable conduct. *See Mitchell v. Frank R. Howard Memorial Hosp.,* 6 Cal.App.4th 1396, 8 Cal.Rptr.2d 521, 529 (1992) (holding that "equitable tolling ... is certainly not available to a plaintiff who engages in the procedural tactic of moving the case from one forum to another in the hopes of obtaining more favorable rulings").

Because the district court's finding of judge-shopping prevents the plaintiffs from showing that they acted in good faith and with reasonable conduct, the plaintiffs cannot show that California's doctrine of equitable tolling should apply to *Garza.* Without equitable tolling, we must affirm the district court's dismissal of *Garza* for failure to timely file within the statute of limitations. The district court's dismissal of *Garza with prejudice,* however, could pose unwarranted danger to the rights of the plaintiffs. *See Ash v. Cvetkov,* 739 F.2d 493, 496–97 (9th Cir.1984) (noting that dismissal with prejudice denies the plaintiff "an opportunity to return and prosecute his claims another day," so is more difficult to justify than dismissal without prejudice). In particular, the dismissal of *Garza* with prejudice might have a res judicata effect precluding further litigation on the merits of *Hernandez.* Therefore, we affirm *Garza*'s dismissal, but *without* prejudice.

## D. Reassignment

■ Because we reverse the dismissal of *Hernandez* and remand *Hernandez* for further proceedings, we must address the plaintiffs' argument that the action should be assigned to a different judge on remand.

■ We have the inherent authority to direct that a case on remand be assigned to a different district court judge. *See United States v. Sears, Roebuck & Co.,* 785 F.2d 777, 779 (9th Cir.1986). In determining whether reassignment is appropriate, we consider three factors:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 780 (quoting *United States v. Arnett,* 628 F.2d 1162, 1165 (9th Cir.1979)).

In the present case, the plaintiffs have not shown a need for reassignment, as defined under the first two factors, that would justify the inconvenience of reassignment, as required under the third factor.

First, the plaintiffs argue that the district court on remand may have "substantial difficulty in putting out of his or her mind" the erroneous finding of judge-shopping and the erroneous view that plaintiffs' counsel could be disciplined if he attempted further judge-shopping in the future. We have already determined that the district court's finding of judge-shopping is not clearly erroneous. Moreover, the district court was correct in asserting that judge-shopping may be grounds for attorney discipline. *See Standing Committee on Discipline v. Yagman*, 55 F.3d 1430, 1443 (9th Cir.1995) ("Judge-shopping doubtless disrupts the proper functioning of the judicial system and may be disciplined."). Accordingly, the first factor does not support reassignment.

Second, the plaintiffs argue that the manner in which the district court dismissed the plaintiffs' actions necessitates reassignment "to preserve the appearance of justice." According to the plaintiffs, the brevity of the October 30 hearing shows that the dismissals were effected with undue haste. But the length of the hearing is not dispositive. Despite the swiftness of the ruling itself, nothing in the record suggests that the district court failed to review carefully the record of both actions prior to the hearing. Thus, the second factor does not support reassignment.

Third, because the *Hernandez* action was dismissed at an early stage in the proceedings, reassignment to a different judge on remand is unlikely to entail a major waste of judicial resources or duplication of efforts. Nevertheless, the fact that the plaintiffs have not shown any need for reassignment under the first two factors means that even the minor degree of waste and duplication caused by reassignment would be "out of proportion to any gain in preserving the appearance of fairness." As a result, nothing in the record demonstrates that this case is one of those "rare occasions [on which], both for the judge's sake and the appearance of justice, an assignment to a different judge is desirable," *Sears*, 785 F.2d at 780.

### CONCLUSION

By failing to consider less drastic alternatives, the district court abused its discretion in dismissing *Hernandez* for judge-shopping and lack of prosecution. Accordingly, we REVERSE the district court's dismissal of *Hernandez;* and REMAND *Hernandez* for further proceedings before the district court. We decline to reassign *Hernandez* to a different judge on remand.

By failing to consider less drastic alternatives, the district court abused its discretion in dismissing *Garza* for judge-shopping. However, the district court properly dismissed *Garza* for failure to timely file within the statute of limitations. This dismissal should be without prejudice. Accordingly, we AFFIRM and REMAND for dismissal of *Garza* without prejudice.[5]

---

**5.** We do not intend our decision with respect to *Garza* in any way to preclude further litigation on the merits of *Hernandez.*